UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MATTHEW MAYER,

    Plaintiff,

    v.                                                 Case No. 24-CV-1310-SCD

VILLAGE OF MENOMONEE FALLS,
JEREMY WALZ,
MENOMONEE FALLS POLICE DEPARTMENT,
MARK WATERS, and
EUGENE NEYHART,

    Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This case is, ostensibly, about overnight parking. After the Village of Menomonee Falls Police Department denied Matthew Mayer's application for an overnight parking permit, Mayer parked overnight in a Village lot and was cited for a parking violation. But other unpermitted vehicles parked overnight in the same lot did not receive citations. Feeling singled out, Mayer sued the Village, the police department, and several individuals associated with the Village in federal court, alleging that their selective enforcement of the overnight parking ordinance violated his right to equal protection. The defendants have moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Alternatively, the defendants move for a more definite statement. Because the allegations in the amended complaint do not state a plausible equal protection claim, I will grant the defendants' motion to dismiss and give Mayer a chance to file a second amended complaint.

# BACKGROUND

Like many municipalities, the Village of Menomonee Falls has ordinances regulating overnight parking. *See* Casper Decl. Ex. B, ECF No. 11-1. Section 106-151 of the Village code generally prohibits vehicles from being parked "on any public street . . . or parking lot of the village for more than 30 minutes between 2:00 a.m. and 6:00 a.m." *See* Am. Compl. § B ¶¶ 7, 19, ECF No. 3.[1] There are exceptions to this general rule. For example, under section 106-152 of the code, individuals desiring to park overnight in certain areas of the Village can obtain a special privilege parking permit from the police department. *See* Ex. B, at 3; *see also* Am. Compl. ¶¶ 14, 22, 31. But certain vehicles—including overweight motor trucks—are ineligible for an overnight parking permit.

On September 30, 2021, long-time Village resident Matthew Mayer applied for an overnight parking permit from the Menomonee Falls Police Department. *See* Am. Compl. ¶¶ 1, 4; *see also* Ex. B, at 4. The police department approved the application and issued Mayer an overnight parking permit. However, the following morning, Mayer received an email from Eugene Neyhart (a captain with the police department) saying that the application had been denied. Am. Comp. ¶ 5; *see also* Ex. B, at 1. Attached to the email was a denial letter explaining that Mayer's vehicle was ineligible for an overnight parking permit because it weighed 9,350 pounds—more than the 8,000-pound limit for motor trucks—as well as a copy of the ordinance and Mayer's application. Ex. B, at 2–4. The police department authorized a refund of the fees Mayer paid and gave Mayer a three-day grace period to make other parking arrangements. *See id.* at 1–2.[2]

---

[1] All subsequent citations to the amended complaint are to section B of that pleading.
[2] The court may consider Neyhart's email and its attachments without converting the defendants' motion to dismiss to a motion for summary judgment because Mayer referenced those materials in his amended complaint, *see* Am. Compl. ¶¶ 5–6, and the denial of the permit application is central to Mayer's claim. *See Williamson v.*

At 3:04 a.m. on October 15, 2021, the police department cited Mayer for violating the Village's overnight parking ordinance. Am. Compl. ¶ 7. Mayer had been parked in the Main Street municipal lot along with several other vehicles, including three delivery vans owned by Bank of Flowers (a local flower shop). Shortly after being issued the citation, Mayer inspected the delivery vans and observed that, despite not displaying an overnight parking permit, they did not receive a ticket. *Id.* ¶ 8.

Sensing inequity in police enforcement, Mayer returned to the Main Street lot the following night. Am. Compl. ¶ 9. He saw the three flower delivery vans parked in the same spots as the previous night. Around 4:00 a.m., a police officer arrived and issued Mayer another overnight parking citation. *Id.* ¶ 10. Mayer complained about the delivery vans also being illegally parked, but the officer left without issuing them citations.

Later that day, a flower shop representative applied for and was granted three overnight parking permits, even though "motor delivery vehicles" were ineligible under the ordinance. Am. Compl. ¶ 11. After seeing the delivery vans displaying the parking permits on October 18, 2021, Mayer emailed Neyhart and demanded that the permits be revoked. *Id.* ¶ 12. Mayer's email quoted the same ordinance language used to revoke his permit. Neyhart, however, refused Mayer's demand, and over the following several weeks, Mayer observed all three delivery vans continuing to display parking permits. *Id.* ¶ 13.

The police department subsequently lobbied the Village board to amend the overnight parking ordinance. *See* Am. Compl. ¶¶ 14–19; *see also* Casper Decl. Ex. A (electronically stored in the clerk's office).[3] On November 15, 2021, Mark Waters (the chief of police) attended a

---

*Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013) ("noting that a court may consider, in addition to the allegations set forth in the complaint itself, . . . documents that are central to the complaint and are referred to in it").

Village board meeting and requested that the weight limit for eligible motor trucks be increased from 8,000 to 9,000 pounds. Waters told the board that, while conducting a review, the police department identified a longstanding local business (presumably the flower shop) that had been parking its vehicles—which weighed just under 9,000 pounds—overnight in a municipal lot because it did not have its own lot. Ex. A, at 51:45–53:26. According to Waters, the amendment would directly support that small business.

The Village board approved the requested amendment. Although the board discussed amending only the weight limit of eligible "motor trucks," the amended ordinance also removed "motor delivery wagons" from the list of vehicles ineligible for an overnight parking permit. *See* Am. Compl. ¶¶ 18–25. In the years prior to amending the ordinance, the Village regularly overlooked overnight parking violations by the flower shop and other vendors, but not by Mayer and other citizens like him. *See id.* ¶¶ 25–34.

Believing that he had been unfairly singled out, Mayer sued the Village, Jeremy Walz (the Village trustee, and later president), the Menomonee Falls Police Department, Chief Waters, and Captain Neyhart in federal court. *See* Compl., ECF No. 1. Mayer later filed an amended complaint asserting that the defendants violated his constitutional rights, specifically his right to equal protection under the 14th Amendment to the Constitution. *See* Am. Compl. p. 2, ¶¶ 17–19, 25, 34–36, 39–41, 44–47. Mayer also appears to assert that the Village has a practice of selective enforcement and a denial-of-service policy targeting him. *See id.* pp. 2, 13–15, ¶¶ 26–34. The matter was reassigned to this court after all parties consented to the

---

[3] The court may consider the video recording of the Village meeting because Mayer referenced the video in his amended complaint—including a link where the recording can be viewed, *see* Am. Compl. ¶¶ 15, 20—and the video is central to his selective enforcement claim. *See Bogie v. Rosenberg*, 705 F.3d 603, 608–09 (7th Cir. 2013) (finding that the plaintiff incorporated a "video recording into her original complaint both by reference and by physically attaching the video recording to the amended complaint").

4

jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 2, 15 & 16.

On February 7, 2025, the defendants moved to dismiss the complaint and the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for a more definite statement under Rule 12(e). *See* Defs.' Mot., ECF No. 8; Defs.' Br., ECF No. 9. Mayer filed a brief in opposition to the motion on April 2, 2025. *See* Pl.'s Resp., ECF No. 26. The defendants have not submitted a reply brief, and the time to do so has passed. *See* E.D. Wis. Civ. L. R. 7(c) (requiring a reply brief to be filed within fourteen days from service of the response brief).

## LEGAL STANDARDS

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634–35 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim satisfies this pleading standard when its factual allegations 'raise a right to relief above the speculative level.'" *Id.* at 635 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). When analyzing a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Johnson v. Enhanced Recovery Co.*, 961 F.3d 975, 980 (7th Cir. 2020) (citing *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019)).

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party

5

cannot reasonably prepare a response." A Rule 12(e) motion "must be made before filing a responsive pleading and must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). "[O]ften it is simpler to dismiss an unintelligible complaint with leave to file a new one so that a plaintiff's allegations are contained in only one document rather than two: the complaint and the more definite statement." *Griffin v. Milwaukee County*, 369 F. App'x 741, 743 (7th Cir. 2010) (citing *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001)).

## DISCUSSION

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2), Mayer's amended complaint is not short, coming in at sixteen single-spaced pages. It also can be criticized for not containing a plain statement of the claim(s) for relief—many of Mayer's allegations contain rambling thoughts, and it's unclear how the last thirteen paragraphs (Am. Compl. ¶¶ 35–47) relate to the first thirty-four. Nevertheless, the amended complaint appears to allege that the defendants violated Mayer's rights under the Equal Protection Clause of the Fourteenth Amendment by subjecting him to selective enforcement of the Village's overnight parking ordinance. The amended complaint also appears to allege that the Village is on the hook for damages under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because it had a widespread practice of selectively enforcing the ordinance.

"The Equal Protection Clause of the Fourteenth Amendment . . . is most familiar as a guard against state and local government discrimination on the basis of race, national origin, sex, and other class-based distinctions." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (citing *Loving v. Virginia*, 388 U.S. 1, 8–12 (1967)). However, the clause "has also come to be understood to protect individuals against purely arbitrary government classifications,

6

even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes." *Id.* "To state a so-called 'class-of-one' equal protection claim, [Mayer] must allege that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)).

Mayer does not allege to be a member of any protected class. Thus, both his claims rely on class-of-one equal protection doctrine. The defendants contend that Mayer has not adequately pled a class-of-one equal protection claim.

The defendants first argue that Mayer has failed to identify any comparators to support his claim that others have been treated more favorably than him; I disagree. The amended complaint alleges that, on two different occasions, the police department cited Mayer for an overnight parking violation but refused to ticket three delivery vans owned by a local flower shop that were parked overnight without a permit in the same lot and at the same time as Mayer. *See* Am. Compl. ¶¶ 7–10. The amended complaint further alleges that the police department revoked Mayer's overnight parking permit because his vehicle was over the 8,000-pound weight limit but later issued permits for the three delivery vans, which also were ineligible under the ordinance. *See* Am. Compl. ¶¶ 4–6, 11–13, 16. Mayer has sufficiently alleged that the flower shop owners were similarly situated to him and received more favorable treatment from the police department regarding the Village's overnight parking regulations. But even if he hadn't that would not be fatal to Mayer's claim, as the Seventh Circuit has "consistently held a [class-of-one] plaintiff need not identify a similarly situated entity in its complaint." *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 590 (7th Cir. 2021) (citing *Geinosky*,

675 F.3d at 748 n.3; *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015); *Capra v. Cook Cty. Bd. of Rev.*, 733 F.3d 705, 717 (7th Cir. 2013)).

The defendants also argue that Mayer has not sufficiently alleged that there was no rational basis for the difference in treatment. "The rational-basis requirement sets the legal bar low and simply requires 'a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *D.B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (quoting *Srail v. Village of Lisle*, 588 F.3d 940, 946 (7th Cir. 2009)). "[T]o get past a Rule 12(b)(6) motion to dismiss on a class of one equal protection claim, 'a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.'" *Id.* (quoting *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008)). Mayer therefore must "eliminate any reasonably conceivable state of facts that could provide a rational basis for" the defendants' actions. *Id.* (quoting *Srail*, 588 F.3d at 946–47).

According to the defendants, the police department had a rational basis for denying Mayer's overnight parking application and for lobbying the Village to amend the overnight parking ordinance. The defendants note that Mayer's vehicle weighed 9,350 pounds—at the time, that was 1,350 pounds over the weight limit for eligible motor trucks. *See* Ex. B, at 2–3. The defendants insist that enforcing the Village's overnight parking ordinance was a rational basis for denying Mayer's application. The defendants further note that the police department lobbied the Village board to amend the ordinance so that a longstanding Village business that didn't have its own lot could park its delivery vehicles overnight in the municipal lot across the street. *See* Ex. A, at 51:45–53:26. In the defendants' eyes, easing the burden of a local business was a rational basis for amending the ordinance. The defendants maintain that the Village also had a rational basis for increasing the weight limit to only 9,000 pounds, as heavier

8

trucks take up more space. Finally, the defendants point out that the amendment did not affect only Mayer (who did not identify himself as a Village resident on his application, *see* Ex. B, at 4)—every vehicle over 9,000 pounds remains ineligible for an overnight parking permit under the amended ordinance.

In his response brief, Mayer accuses the defendants of a "highly misconstrued misreading" of the amended complaint. Pl.'s Resp., at 2. Mayer insists that he never asserted that the defendants violated his equal protection rights when they denied his application for an overnight parking permit. However, despite Mayer's attempt to clear up the supposed misreading, his claims remain muddied. Mayer cryptically says that the grounds for relief are presented in paragraphs 26 through 34 of the amended complaint, which focus on the police department's alleged actions of not ticketing the flower shop and other vendors for overnight parking violations and improperly issuing the flower shop overnight parking permits. According to Mayer, the Village had a widespread practice of selectively enforcing its overnight parking ordinance in favor of vendors and at the expense of citizens like him. *See* Pl.'s Resp., at 2–3 (characterizing the Village's selective enforcement as a "Free Vendor Parking" law).

Mayer's admissions that he violated the ordinance and that the Village's allegedly selective enforcement applied to all other non-vendor citizens seem to defeat his class-of-one equal protection claim. *See Van Dyke v. Village of Alsip*, 819 F. App'x 431, 432–33 (7th Cir. 2020) (affirming the dismissal of a class-of-one equal protection claim against a village because the plaintiff admitted the prohibited conduct and that the village had enforced the ordinance against a third party). Those admissions contradict Mayer's allegations that the defendants were targeting him specifically and provide a conceivable rational basis for the

defendants' actions, namely, that the Village was giving a break to businesses but not individual citizens. They also highlight another issue with Mayer's claims: the enforcement of the Village's overnight parking ordinance "is a prosecutorial decision . . . which entails selectivity." *Id.* at 432 (citations omitted).

"[T]he government does not violate the Equal Protection Clause simply by enforcing a law against only some of the law's violators." *Tranchita v. Callahan*, 511 F. Supp. 3d 850, 868 (N.D. Ill. 2021) (citing *Hameetman v. City of Chicago*, 776 F.2d 636, 641 (7th Cir. 1985)). For example, the Supreme Court has explained (albeit in dicta) that "allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action." *Engquist*, 553 U.S. at 603–04. "Selective, incomplete enforcement of the law is the norm in this country." *Hameetman*, 776 F.2d at 641. Consequently, while the failure "to prosecute all known lawbreakers . . . involves dramatically unequal treatment," that form of selective prosecution "has no standing in equal protection law." *Esmail v. Macrane*, 53 F.3d 176, 178–79 (7th Cir. 1995) (citing *Wayte v. United States*, 470 U.S. 598, 607–08 (1985); *United States v. Smith*, 953 F.2d 1060, 1063 (7th Cir. 1992)). "[A] defendant's enforcement of a law or ordinance against the plaintiff and not others 'is not typically a basis for a class-of-one challenge' unless the enforcement is 'based on some invidious discrimination.'" *Tranchita*, 511 F. Supp. 3d at 868 (quoting *Van Dyke*, 819 F. App'x at 431–33).

Mayer does not allege in the amended complaint that the defendants singled him out for an invidious reason. Mayer does not allege that the police department refused to issue him an overnight parking permit, cited him for overnight parking violations, or lobbied to exclude Mayer's vehicle from the amended ordinance in retaliation for exercising his constitutional

10

Case 2:24-cv-01310-SCD  Filed 06/10/25  Page 10 of 12  Document 27

rights or because of his membership in a vulnerable group. *See Esmail*, 53 F.3d at 179 (citing *Wayte*, 470 U.S. at 608). Mayer also does not allege that the defendants' actions were wholly arbitrary. *See Frederickson v. Landeros*, 943 F.3d 1054, 1060–61 (7th Cir. 2019) (citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303–04 (1976)). In fact, Mayer's beef appears to be that the defendants applied the overnight parking ordinance more leniently—or perhaps not at all—to longstanding, local businesses. Although one might reasonably question the wisdom of that distinction, it's not arbitrary or illogical. And Mayer has not alleged that the defendants harbored a personal vendetta against him. *See Van Dyke*, 819 F. App'x at 432–33.

To be sure, the amended complaint does include allegations of the police department denying Mayer service or dismissing his grievances. *See* Am. Compl. ¶¶ 35–47. But those issues did not relate to the overnight parking ordinance, and all occurred *after* the police department denied Mayer's parking application and issued him parking citations. That alleged conduct therefore does not support any alleged bias against Mayer regarding the parking issue. Put another way, the amended complaint does not include any facts suggesting that the defendants harbored ill will toward Mayer prior to him applying for the overnight parking permit in September 2021 and being cited for parking violations in October 2021.

In sum, Mayer has failed to sufficiently plead a class-of-one equal protection claim regarding the defendants' alleged selective enforcement of the Village's overnight parking ordinance. Mayer expressly disclaims asserting an equal protection claim related to the denial of his overnight parking application, Mayer fails to allege that the defendants' enforcement of the ordinance against him and not others was based on some invidious discrimination, and Mayer alleges facts suggesting a rational basis for amending the ordinance. Because the amended complaint fails to state a claim for any constitutional violation, the Village cannot

11

be held liable under *Monell*. *See D.B.*, 725 F.3d at 687 (citing *Palka v. Shelton*, 623 F.3d 447, 455 (7th Cir. 2010)).

## CONCLUSION

Accordingly, for all the foregoing reasons, the court **GRANTS** the defendants' motion to dismiss, ECF No. 8, and **DENIES as moot** the defendants' motion for a more definite statement and pleading, ECF No. 8. I will, however, allow Mayer to file an amended complaint, as the defect here—the failure to plead sufficient facts—is potentially curable. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) ("[T]he court should grant leave to amend after dismissal of the first complaint 'unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted.'") (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). Mayer may have until **July 1** to file a second amended complaint. If Mayer files a second amended complaint, it will replace the prior complaints, and it must be complete without reference to them. *See Reid v. Payne*, 841 F. App'x 1001, 1002–03 (7th Cir. 2021) (citing *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004)).

**SO ORDERED** this 10th day of June, 2025.

*/s/ Stephen C. Dries*
STEPHEN C. DRIES
United States Magistrate Judge